# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Google account:<br>jpaezgerardo@gmail.com<br>("Target Account") | )<br>)<br>)  Case No.  26-mj-00287<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Kyle Hendrixson*
Applicant's signature

Kyle Hendrixson, HSI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: **Jan 20, 2026**                    */s/ Barbara L. Major*
                                           Judge's signature

City and state: San Diego, California      Hon. Barbara L. Major, United States Magistrate Judge
                                           Printed name and title

**AFFIDAVIT**

I, Kyle Hendrixson, Special Agent (SA) with Homeland Security Investigations (HSI), having been duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a warrant to search accounts associated with the following identifiers:

    a. jpaezgerardo@gmail.com; and

    b. Phone number: +1 714-716-3557 (the "**Target Accounts**");

that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider, located at 1600 Amphitheater Parkway, Mountain View, California, as described in Attachment A, for items that constitute, evidence, fruits, and instrumentalities of violations of federal criminal law, namely, violations of Title 21, United States Code, Sections 952, 960, and 963 (importation of controlled substances and conspiracy to do the same) (the "Target Offenses"), as more fully described in Attachment B, for the period September 1, 2025, through the date of October 22, 2025. Attachments A and B are incorporated herein by reference.

2. The information set forth in this affidavit is based on my personal knowledge, knowledge obtained from other individuals during my participation in this investigation (including other law enforcement officers), my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the information associated with the **Target Accounts**, it does not set forth each and every fact that I or others have learned during the course of this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in

part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

## TRAINING AND EXPERIENCE

3. I am an HSI Special Agent and have been so employed since March 2024. As an HSI Special Agent, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) authorized to conduct investigations and make arrests for felony offenses. I am currently assigned to the HSI San Diego Contraband Smuggling Group 2.

4. To become an HSI Special Agent, I completed the Homeland Security Investigations Special Agent Training located at the Federal Law Enforcement Training Center in Glynco, Georgia. I have received training in internet investigations, cyber intrusions investigations, and the preservation and review of computer-related evidence. Throughout my tenure with HSI, I have conducted and participated in numerous investigations involving transnational drug trafficking organizations ("DTO").

5. As an HSI Special Agent, I have investigated cases involving the importation and trafficking of controlled substances such as cocaine, methamphetamine, heroin, and fentanyl. I am cross designated with the DEA and have authority to conduct Title 21 investigations and enforcement activity. I have directed drug-related investigations, interviewed defendants and witnesses, and participated in many other aspects of the investigations, including the seizure of controlled substances, reviewing evidence, conducting physical and electronic surveillance, and executing search and arrest warrants.

6. Through my training, experience, and conversations with other law enforcement personnel, I have gained a working knowledge and insight into the operational habits of drug traffickers. I am aware that it is a common practice for drug traffickers to work in concert with coconspirators and others using electronic communications and remote computing services, such as those offered by Google. For example, drug traffickers often use Google accounts to communicate using email and messaging services, such as Gmail and Google Messages, to coordinate travel, engage

with financial institutions through which they launder proceeds, and connect with drug sources and customers. In addition, because Google services are accessible on cell phones and laptops, information Google collects about the locations of those devices when they access Google services also provides relevant evidence of drug trafficking location information.

7. Based on my training and experience, I am aware of the following:

    a. Criminals who operate for DTOs often use Google services, such as Gmail, Google Docs, and Google Messages, to communicate with coconspirators.

    b. Criminals often use Google Drive to store documents related to their activity, including addresses, passwords, and transaction documents.

    c. Individuals who engage in violations of the Target Offenses frequently use email and chat services to communicate with co-conspirators, regarding the Target Offenses.

    d. Search history, which Google maintains, can also provide important evidence of identity, state of mind, or criminal activity. For example, individuals involved in drug trafficking often search for terms related to the trafficking or terms related to "how to fool a canine," or criminal statutes.

    e. When an individual participates in a criminal scheme, photographs or videos stored in that individual's electronic accounts, such as email accounts or photo/video libraries, often contain evidence of that scheme because such photographs or videos can provide evidence of relationships between participants in the scheme. For example, photographs or videos may evidence joint vacations, social interactions, and potentially provide insight into the frequency of contacts between individuals.

    f. Historical location data collected by a user's electronic accounts can be relevant to establishing that user's participation in a criminal conspiracy, such as by showing when the relevant actors were together in person and thus how and when information was transmitted.

g. Individuals who engage in criminal schemes commonly maintain electronic records relating to their schemes, such as contact information for co-conspirators, records of fraudulent documents or emails, and financial account statements. These materials can be easily moved between an individual's electronic storage accounts, such as by email and file sharing and transfers between accounts (such as a Google Drive account).

h. Where electronic messages or other electronic files are used in furtherance of criminal activity, evidence of the criminal activity can often be found months or even years after it occurred. This is typically true because electronic files can be stored on computer servers for years at little or no cost and users thus may have little incentive to delete data that may be useful to consult in the future.

## BACKGROUND INFORMATION FOR GOOGLE

8. Based on my review of publicly accessible information offered by Google on its websites, I am aware of the following:

a. Google offers to the public a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications using a username and password. Once logged into a Google account, a user can connect to Google's full suite of services offered to the general public.

b. In particular, as relevant here, Google offers free, web-based email services to the public. Specifically, Google allows subscribers to maintain email accounts through Gmail under the domain gmail.com and other domain names chosen by the user or an enterprise. A subscriber using Google's services can access his or her email account from any computer connected to the Internet.

c. Google maintains the following records and information with respect to every Google account that has email services:

i. Email contents. In general, any email (which can include attachments such as documents, images, and videos) sent to or from a subscriber's

account, or stored in draft form in the account, is maintained on Google's servers unless and until the subscriber deletes the email. If the subscriber does not delete the email, it can remain on the Google's computers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time. Google also allows users to send emails in "confidential" mode, which enables a user to set an expiration date for messages or revoke access at any time, and recipients of the confidential message will be unable to forward, copy, print, and download the message.

       ii.    Subscriber and billing information. Google collects and maintains (typically unverified) identifying information about each subscriber, including, for example, name, username, address, telephone number, recovery and alternate email addresses, and sign-in phone numbers. A recovery email address, which can be associated with more than one Gmail account, is used to regain access to an account if a password has been forgotten or a user has been locked out of their account. An alternate email address is a non-Gmail account that a user has provided that can be used to sign into a Gmail account. A sign-in phone number is a phone number that can be used as a primary/additional login identifier to access an account. Google also maintains records concerning the date on which the account was created, the Internet protocol ("IP")1 address of the user at the time of account creation, the current status of the account (e.g., active or closed), the length of service, and the types of Google services utilized by the subscriber. Finally, Google maintains records regarding (1) fetching and forwarding email addresses, which are email accounts from which the primary account receives emails and forwards emails, respectively; (2) email aliases, domain aliases or separate domains associated with the account, which are means by which accounts with other domain names or other email addresses can be associated with a primary Google account; (3) other Google accounts that have access to the primary account, which access can be granted by the user of the primary account; and (4) other email accounts that are associated with the primary Google account.

     iii. Device Information. Google may also collect and maintain information identifying devices (including both computers and mobile devices) used to access accounts, including, for example, device serial number, a GUID or Global Unique Identifier, a phone number, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI").

     iv. Cookie Data. Google typically uses features to track the activity of users of its accounts, including whether or not the user of an account accesses other accounts at Google using the same computer or device, or accesses accounts maintained by other companies while logged into an account. One of the ways they do that is by using cookies, a string of characters stored on the user's computer or web browser that is recognized by Google when a computer visits its site or logs into an account.

     v. Transactional information. Google also typically retains certain transactional information about the use of each account on its system, including records of login and logout events relating to Google accounts, including user IP addresses and dates and timestamps.

     vi. Customer correspondence. Google also typically maintains records of any customer service contacts with or about the subscriber, including any inquiries or complaints concerning the subscriber's account.

     vii. Preserved and backup records. Google also maintains preserved copies of the foregoing categories of records with respect to an account, for at least 90 days, upon receiving a preservation request from the Government pursuant to 18 U.S.C. § 2703(f).

    d. Google may also maintain backup copies of the foregoing categories of records pursuant to its own data retention policy.

      i.  Google Contacts. Google provides an address book for Google accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Google preserves contacts indefinitely, unless the user deletes them.

      ii.  Google Calendar. Google provides users with the ability to create and maintain online calendars, in which they can add appointments, events, and reminders, which are synchronized across registered computers and mobile devices. Users can share their calendars with other users, allowing the maintenance of joint calendars. Google preserves appointments indefinitely, unless the user deletes them.

      iii.  Google Messaging Content. Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user has not disabled that feature or deleted the messages.

      iv.  Google Drive content. Google Drive is a cloud storage service automatically created for each Google account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides (Google's presentation program).Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Google provides users with a certain amount of free storage, currently 15 gigabytes, and users can purchase a storage plan through Google to store additional content. A user can access content stored on Google Drive by logging into his or her Google account through any computer or other electronic device that is connected to the

Internet. Users can also share files stored on Google Drive with others and grant those with access the ability to edit or comment. Google maintains a record of who made changes and when to documents edited in Google applications. Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

v. Google Maps. Google Maps is service which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. If users log into their Google account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps. Google stores Maps data indefinitely, unless the user deletes it.

vi. Google Photos. Google Photos is a cloud-based photo and video storage service through which users can share or receive photos and videos with others. Users have the option to sync their mobile phone or device photos to Google Photos. Google also retains the metadata—or data that provides information about the data in question, such as the time and date of creation, the author or creator, the means of its creation, the purpose of the data, among other data—for photos and videos that are uploaded to Google Photos if that data is included by the user as part of the upload. This metadata includes what is known as exchangeable image file format (or "Exif") data, and can include GPS location information for where a photo or video was taken.

vii. Google Voice. Google Voice is a service through which a Google account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

viii. Location History data. Google collects and retains data about the location at which Google account services are accessed from any mobile device, as

8

well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. This location data may be associated with the Google account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google account, such as Location History or Web & App Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or autodeletion at three months.

    ix.  Chrome Browser and "My Activity" Data. Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google account in a record called My Activity. My Activity also collects and retains data about searches that users conduct within their own Google account or using the Google Internet search engine available at http://www.google.com while logged into their Google account.

    x.  YouTube. YouTube is a video platform that offers Google accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. YouTube may keep track of a user's searches, likes, comments, and change history to posted videos. YouTube also may keep limited records of the IP addresses used to access particular videos posted on the service. For accounts created before June 2020, YouTube Watch History is stored indefinitely, unless the user manually deletes. For

accounts created after June 2020, YouTube Watch History is stored for three years, unless the user manually deletes it.

## JURISDICTION

9. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, United States Code, Section 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## STATEMENT OF PROBABLE CAUSE

10. On October 22, 2025, PAEZ was arrested at the San Ysidro Port of Entry after 130.98 kilograms (288.76 pounds) of heroin were found concealed in the air filter compartment, behind the glovebox, and in the spare tire, rear back seat, front right fender flare, and firewall of his 2008 Chevrolet Silverado (the vehicle). PAEZ is the registered owner of the vehicle, which he had driven into the United States from Mexico.

11. During his post *Miranda* interview, PAEZ initially denied knowledge. Then he said he was being paid $8,000 to smuggle contraband, but he claimed he had received threats from his recruiters. PAEZ admitted doing a "starter run" a couple weeks before his arrest where he smuggled "yellow bricks." When asked if he needed the money, PAEZ said yes. PAEZ admitted using his cellular phone to communicate with his contacts in the DTO. PAEZ said he communicated with these contacts via phone calls and the applications Facebook Messenger, WhatsApp, and Google Messages. PAEZ further admitted deleting these communications before he was arrested.

12. During the same interview, PAEZ gave consent to HSI to download and review the contents of his cell phone. Upon reviewing the download, HSI found all the applications PAEZ stated he used were present on his phone. HSI did not find the communications, however, corroborating PAEZ's statement that he had deleted them.

13. Also during the interview, PAEZ stated that his vehicle had been broken into two weeks prior (approximately October 8, 2025). He said a backpack with his personal

1  information had been taken. PAEZ believed that the DTO had broken into his vehicle
2  because, after the fact, they told him that they "now" had his information. I contacted the
3  Santa Ana Police Department (SAPD) and confirmed that PAEZ had reported his vehicle
4  broken into, but it had occurred more than a month prior, on September 3, 2025. Among
5  the items reported stolen were a backpack, two (2) cell phones, a laptop, and tools.

6      14.    Furthermore, upon reviewing border crossing records, it appears that starting
7  on September 2, 2025, PAEZ began crossing in this vehicle much more regularly. After
8  crossing a total of seven times between January and June 2025, PAEZ crossed seven times
9  in September and October 2025 alone—he did not cross at all between June and
10 September.

11     15.    Based on my education, training, experience, and knowledge of this
12 investigation, and the foregoing facts, I believe PAEZ communicated with the DTO
13 regarding the Target Offenses using the **Target Account**, and these communications were
14 in furtherance the Target Offenses. I further believe the missing information associated
15 with the **Target Account** constitutes evidence, fruits, and instrumentalities of violations
16 based on PAEZ's statements.

17     **PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

18     16.    I anticipate executing this warrant under the Electronic Communications
19 Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by
20 using the warrant to require Google to disclose to the government copies of the records
21 and other information (including the content of communications and stored data)
22 particularly described in Section II of Attachment B. Upon receipt of the information
23 described in Section II of Attachment B, government-authorized persons will review that
24 information to locate the items described in Section II of Attachment B.

25     17.    Federal agents and investigative support personnel are trained and
26 experienced in identifying communications relevant to the crimes under investigation.
27 Google's personnel are generally not. It would be inappropriate and impractical for
28 federal agents to search Google's vast computer network for the relevant accounts and

then to analyze the contents of those accounts on the Google premises. The impact on its business would be disruptive and severe.

18. Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the **Target Accounts**, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the Google's business activities, to protect the privacy of its subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, agents seek authorization to allow Google to make digital copies of the entire contents of the account subject to seizure. Those copies will be provided to me or to an authorized federal agent. The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

19. Analyzing the data to be provided by Google may require special technical skills, equipment, and software. It may also be time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang or typographical errors. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Attachments to electronic mail messages are often in proprietary formats that do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. Internet Service Providers like Google do not always organize the electronic

files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

20. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by Google, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination of Google's records will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

21. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic communications that identify any users of the subject account and any electronic communications sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications.

22. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification ad extraction of data within the scope of this warrant.

**GENUINE RISK OF DESTRUCTION OF DATA**

23. Based upon my experience and training, and the experience and training of other law enforcement agents with whom I have communicated, electronically stored data may be permanently deleted or modified by users possessing basic computer skills. In this case, a preservation request was submitted to Google on October 23, 2025. As such, the risk of destruction of data has been reduced, but may still exist for accounts used by the targets of the investigation that have not been identified and for information generated after the preservation requests were submitted.

**PRIOR ATTEMPTS TO OBTAIN DATA**

24. The United States has attempted to obtain some of this data by conducting a consent search of PAEZ's phone, but by that time, the communications had been deleted from his phone.

**CONCLUSION**

25. Based on the forgoing, I believe there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of the Target Offenses, as described in Attachment B, will be found in the properties to be searched, as described in Attachment A.

*Kyle Hendrixson*
Kyle Hendrixson
HSI Special Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this **Jan 20, 2026** day of January, 2026.

*Barbara L Major*
Hon. Barbara L. Major
United States Magistrate Judge

14